UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID ROSENBERG, THE ROSENBERG FAMILY NOMINEE TRUST, and THE ROSENBERG FAMILY NOMINEE TRUST/SAWDRAN,<br><br>   Plaintiffs,<br><br>v.<br><br>DAVID GENTILE,<br><br>   Defendant. | Civil Action No. |

## COMPLAINT AND JURY DEMAND

### i. Introduction

1. This case concerns Defendant David Gentile ("Mr. Gentile" or "Defendant") and his manipulation of accounting and financial statements at GPB Prime Holdings, LLC ("GPB Prime") and Automile Parent Holdings, LLC ("Automile Parent") to deprive Plaintiffs David Rosenberg ("Mr. Rosenberg"), the Rosenberg Family Nominee Trust, and the Rosenberg Family Nominee Trustee/Sawdrawn (collectively, "Plaintiffs" or "Rosenberg Group") of their lawful 7.422% distributive share of Automile Parent's net cash flow in contravention of the Amended and Restated Operating Agreement ("Operating Agreement").

2. Automile Parent was a successful business, which operated a network of automobile dealerships known as Prime Automotive Group ("PAG"). Year after year, unbeknownst to the Rosenberg Group, Mr. Gentile, who controlled both Automile Parent and its majority shareholder GPB Prime, caused 100% of net cash flow to be allocated to GPB Prime, with none allocated to Mr. Rosenberg, in violation of the Operating Agreement and of Mr. Gentile's fiduciary duties to the Rosenberg Group. Indeed, Mr. Gentile established accounting systems and protocols so that even following his departure from the board of

1

Automile Parent, he caused that misallocation to continue. Indeed, on information and belief, even following his technical withdrawal from the board, he continued to control the actions of members of the board from behind the scenes.

3. The misallocation of proceeds ultimately led to the sale of PAG to another group of automotive dealerships, Group 1 Automotive Group, Inc. ("Group 1"), on November 17, 2021 for $880 million. On information and belief, the net cash flow from that sale was $550 million. As a direct result of the systems that Mr. Gentile established through his control of PAG to ensure that the Rosenberg Group did not receive its proportionate share of eventual distributions, 100% of the net cash flow of the sale was allocated to GPB Prime. On information and belief, the entirety of that net cash flow, together with the previously misallocated funds, were distributed to GPB Prime and ultimately to its owners, including Mr. Gentile, on or about November 17, 2021.

4. Based on the foregoing allegations, as further explained below, the Rosenberg Group seeks a declaratory judgment that (i) pursuant to Section 5.1(c) of the Operating Agreement, the Rosenberg Group was entitled to have net cash flow allocated to it in accordance with the Rosenberg Group's Distribution Percentage Interest in Automile Parent, namely 7.422%.; and (ii) pursuant to Section 5.1(c) of the Operating Agreement, when Automile Parent makes any distributions, it must make a distribution to the Rosenberg Group attributable to it in accordance with the Rosenberg Group's Distribution Percentage Interest in Automile Parent, which is currently 7.422%.

5. The Rosenberg Group further brings this action for damages against Mr. Gentile resulting from his orchestration of deceptive accounting practices based upon claims for breach of fiduciary duty; business / corporate waste; and unjust enrichment.

## ii.     Parties

6.     Plaintiff Mr. Rosenberg is an individual who resides in Massachusetts. Mr. Rosenberg, together with his family and a financial backer, founded, owned, and operated the network of automobile dealerships known as Prime Motor Group for approximately ten years. The Rosenberg name, beginning with Ira Rosenberg, is and has long been known in the automotive business for both success and integrity. Together with the Rosenberg Trust and the Rosenberg Sawdran Trust, Mr. Rosenberg had an ownership interest in Automile Parent and is therefore entitled to the withheld past-due distributions from Automile Parent, arising from Mr. Gentile's fraudulent accounting practices that deprived the Rosenberg Group of such distributions.

7.     Plaintiff Rosenberg Trust is a Massachusetts trust held for the benefit of certain members of the Rosenberg family. Together with Mr. Rosenberg and the Rosenberg Sawdran Trust, the Rosenberg Trust had an ownership interest in Automile Parent and is therefore entitled to the withheld past-due distributions from Automile Parent, arising from Mr. Gentile's fraudulent accounting practices that deprived the Rosenberg Group of such distributions.

8.     Plaintiff Rosenberg Sawdran Trust is a Massachusetts trust held for the benefit of certain members of the Rosenberg family. Together with Mr. Rosenberg and the Rosenberg Trust, the Rosenberg Sawdran Trust had an ownership interest in Automile Parent and is therefore entitled to the withheld past-due distributions from Automile Parent, arising from Mr. Gentile's fraudulent accounting practices that deprived the Rosenberg Group of such distributions.

9. Defendant Mr. Gentile is an individual who resides in New York. At all times relevant hereto, Mr. Gentile was a manager, director, officer, control person and ultimate co-owner of GPB Prime and Automile Parent. Upon information and belief, Mr. Gentile engaged in a course of conduct intentionally calculated to improperly divert Automile Parent's net cash flow into a corporation controlled by Mr. Gentile for his own benefit and to the detriment of the Rosenberg Group.

### iii. Jurisdiction and Venue

10. The United States District Court for the District of Massachusetts has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00) and is between citizens of different states.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391, given that a substantial part of the acts and omissions giving rise to this action occurred within the District of Massachusetts. 28 U.S.C. § 1391(b).

### iv. Factual Allegations

**GPB Capital Invests in Prime Motor Group**

12. In early 2017, a broker approached Mr. Rosenberg asking if he would be interested in selling the network of automobile dealerships that he and his father, Ira, had developed, known as Prime Motor Group, to the GPB Funds. At the time, Mr. Rosenberg and his partners were not actively seeking to market or sell Prime Motor Group.

13. Discussions progressed and, on or about May 12, 2017, GPB Capital and GPB Prime executed a Purchase and Sale Agreement (the "P&S Agreement") with each of the Plaintiffs and others. Under the terms of the P&S Agreement, Mr. Rosenberg (either directly

or through the family trusts) was to continue to hold a material ownership interest in the dealerships and continue to operate them. In particular, the Rosenberg Group retained a 10% ownership interest and 23.75% voting interest via Automile Parent. Defendant GPB Prime retained the other 90% ownership interest and 76.25% voting interest in Automile Parent. The purchase closed in September 2017.

14. The Operating Agreement provides at Section 5.1(c) that all net cash flow of Automile Parent must be distributed proportionally to GPB Prime and the Rosenberg Group in accordance with their respective "Distribution Percentage Interest[s]." The Operating Agreement defines "Distribution Percentage Interest" as a member's percentage interest in the distributions and/or allocations of Automile Parent, as of any date it makes a distribution of net cash flow, assets or an allocation of profits or losses. A true and correct copy of the Operating Agreement is attached hereto at **Exhibit 1**.

15. In other words, as part owners with a distribution percentage interest in Automile Parent, the Rosenberg Group is entitled to its pro rata share of any Automile Parent distributions commensurate with that interest at the time of the distributions.

### The Amended Repurchase Agreement

16. In late 2017, around the time of the GPB-Prime closing, the Rosenberg Group and Automile Parent also entered into a Repurchase Agreement, pursuant to which Automile Parent agreed to purchase all of Plaintiffs' equity at a predetermined valuation if certain events were to occur. The Repurchase Agreement and potential revisions thereto were discussed several times after the closing.

17. The most recent renegotiation resulted in an Amended and Restated Repurchase Agreement dated March 1, 2019 ("Amended Repurchase Agreement"), which allowed

Plaintiffs to exercise a "put" option pursuant to which Automile Parent was to buy out their interest for approximately $24 million without the termination of Mr. Rosenberg's employment. A true and correct copy of the Amended Repurchase Agreement is attached hereto at **Exhibit 2**.

18. Pursuant to the Amended Repurchase Agreement, GPB Prime's ownership interest in Automile Parent increased to 92.578% and the Rosenberg Group's ownership interest collectively decreased to 7.422% to account for certain dealership acquisitions that were funded after GPB Capital's investment in Prime Motor Group. The voting interests of GPB Prime and the Rosenberg Group remained the same.

19. Under Section 2.3 of the Amended Repurchase Agreement, the Rosenberg Group was to keep its interest in Automile parent until the "put" has been paid in full:

> Impact of Closing(s) - The Selling Owners shall continue as members of the Company, and as members shall continue to receive distributions based on their then current Distribution Percentage Interests, if any, from the Company, until the Closing of the sale of all of the Sellers' Membership Interests pursuant to this Agreement. The transfer of ownership of Sellers' Interests shall occur proportionately (as to their Distribution Percentage Interests) at the time of payment of each installment in good funds, and Sellers shall retain all incidents of ownership associated with such remaining Interests until paid. Sellers' Voting Percentage Interests shall be retained in full and shall undergo no reduction or transfer until the Third Anniversary Closing has been completed and Sellers have been paid in full, including any withheld sums due to Sellers pursuant to Section 2.1 above, whereupon the Sellers' Voting Percentage Interests shall transfer to Purchaser. Until the Purchaser repurchases all of the Sellers' Membership Interests, Mr. Rosenberg shall be entitled to remain as a member of the Board of Managers of the Company, subject only to a disqualifying event.

*See* **Exhibit 2**, § 2.3.

### The Rosenberg Group's Entitlement to Net Cash Flow Following its Exercise of the Put Option

20. On April 1, 2019, the Rosenberg Group claimed its right to be bought out through the "put" option.

21. Mr. Gentile claimed that as a result of the Amended Repurchase Agreement, the Rosenberg Group had no entitlement to its proportionate share of net cash flow from Automile Parent following the exercise of the "put" option.

22. However, the Rosenberg Group is entitled to its proportionate share of net cash flow of Automile Parent following its exercise of the "put" option. Section 2.3 of the Amended Repurchase Agreement states that the Rosenberg Group shall remain a member of Automile Parent in the event it claims the "put" option and, as members, "shall continue to receive distributions based on their then current Distribution Percentage Interests, if any, from the Company, until the Closing of the sale of all of the Sellers' Membership Interests pursuant to this Agreement."

23. Payment of the "put" option was to take place through four separate installments/payments over the four years following the Rosenberg Group's exercise, but no payments were made as scheduled.

**Defendant Prevented the Rosenberg Group from Exercising its Decision-Making Rights**

24. On September 16, 2019, Automile Parent purported to remove Mr. Rosenberg from its Board via a written consent. However, that written consent was unlawful and ineffective where the Rosenberg Group was not permitted to vote on the removal.

25. As the controller of GPB Prime and Automile Parent, Mr. Gentile caused the removal of Mr. Rosenberg from the Automile Parent Board.

26. Under the Operating Agreement, the Board generally manages Automile Parent. *See* **Exhibit 1**, § 7.1.

27. In managing Automile Parent, the Rosenberg Group was to hold one seat on the Board, known as the RG Manager, and the "RG Manager [was entitled to] one (1) vote on all

7

matters submitted to the Board of Managers." *See id.*, §7.3(b). Mr. Rosenberg served as the RG Manager at the time of his purported removal.

28. After the purported removal of Mr. Rosenberg, Automile Parent, at Mr. Gentile's direction, did not permit Mr. Rosenberg, or any representative of the Rosenberg Group, to participate in the Board's decision-making.

29. Among other things, Mr. Gentile facilitated the Rosenberg Group's exclusion from any decision-making regarding how to allocate or distribute Automile Parent's net cash flow.

30. Mr. Gentile further facilitated the Rosenberg Group's exclusion from decision-making related to the sale of PAG, including, without limitation, whether to sell PAG, the process by which to market and attempt to sell PAG, and the approval of any proposed transaction for the purchase of PAG, including the Group 1 transaction.

**Defendant Improperly Caused Automile Parent to Allocate
All Net Cash Flow to GPB Prime**

31. As a result of Automile Parent's unlawful exclusion of the Rosenberg Group from any decision-making, Mr. Gentile, who, as previously stated, orchestrated Mr. Rosenberg's removal from the Board, was able to allocate 100% of the net cash flow of Automile Parent to GPB Prime in violation of the Operating Agreement.

32. In violation of Section 5.1(c) of the Operating Agreement, Automile Parent, at Mr. Gentile's direction, has allocated all its net cash flow to GPB Prime and none of its net cash flow to the Plaintiffs.

33. The Amended Repurchase Agreement states that Plaintiffs are entitled to allocations of their collective proportional share of income and cash flows until Mr. Rosenberg's entire "put" option has been paid. Automile Parent made no payments of the

"put" option until the parties entered into a Settlement and Release Agreement on November 11, 2021 ("Settlement Agreement"), even though Mr. Rosenberg exercised his "put" option on April 1, 2019.

34. Leveraging Mr. Rosenberg's removal from the Automile Parent Board to prevent him from learning about the business' accounting operations, Mr. Gentile caused all net cash flow from the business to be allocated to GPB Prime, with none of the net cash flow allocated to the Rosenberg Group.

## The Settlement

35. Mr. Rosenberg filed suit in the Commonwealth of Massachusetts in Norfolk County Superior Court after Automile Parent, at Mr. Gentile's direction, failed to make full payment on his "put" option (the "Massachusetts Lawsuit"). The Massachusetts Lawsuit did not relate to the misallocation of proceeds alleged here and makes no allegations related to these issues.

36. On November 11, 2021, the Rosenberg Group reached a $30 million settlement with Automile Parent and other defendants. Although Mr. Gentile was a defendant in the Massachusetts Lawsuit, he was not a party to the settlement agreement.

37. The Settlement Agreement states, in relevant part, that "[u]pon [Mr.] Rosenberg's receipt of the Redemption Payment, the Parties agree that any and all obligations of Automile Parent and GPB Prime under the Amended Repurchase Agreement have been satisfied, and the Amended Repurchase Agreement is of no further force and effect. Upon release of the Redemption Payment from the Escrow Agent to Rosenberg, the Plaintiffs acknowledge that they have disclaimed any rights associated with the Plaintiffs' Membership Interest, whether voting rights, rights to future distributions, or otherwise, other than bare legal title, which

shall transfer upon the delivery of the Secondary Release Notice (as defined in the Escrow Agreement) to the Escrow Agent." *See* **Exhibit 3**, § 2(b).

## The Sale

38. On November 17, 2021, Group 1 acquired 27 of 30 PAG dealerships, along with three collision centers and other real estate assets in a mega transaction that cost $880 million. On information and belief, the net cash flow from the sale, approximately $550 million, together with the previously existing allocation of net cash flow, was distributed to GPB Prime and, ultimately, to Mr. Gentile on the same date.

39. As of November 17, 2021, the Rosenberg Group had not yet received the Redemption Payment, as defined in the Settlement Agreement, such that the Rosenberg Group's rights to its proportionate distribution had not yet been extinguished.

40. Pursuant to Section 5.1(c) of the Operating Agreement, the Rosenberg Group was entitled to receive 7.422% of the net cash flow from the $880 million sale.

41. The Rosenberg Group was further entitled to its proportionate share of the distribution of net cash flow from the operation of PAG made at the time of the Group 1 sale.

42. The Rosenberg Group received the Redemption Payment only after the Group 1 sale and the contemporaneous distribution of net cash flow.

43. Mr. Gentile, in his capacity as CEO of the controlling member (GPB Prime) of Automile Parent, made a conscious, financially motivated decision to shortchange the Rosenberg Group by mismanaging the business, engaging in self-dealing, and ensuring that Automile Parent misallocated the net cash flow.

## v. Causes of Action

### COUNT I: Declaratory Judgment, G. L. c. 231A

44. Plaintiffs reallege and incorporate herein by reference each of the prior paragraphs.

45. There exists between the parties to this action an actual justiciable controversy within the jurisdiction of this court, concerning the matters alleged above in this complaint.

46. Plaintiffs pray that the court adjudicate and declare as follows:

Pursuant to Section 5.1(c) of the Operating Agreement, Automile Parent was required to allocate to the Rosenberg Group the net cash flow attributable to it in accordance with the Rosenberg Group's Distribution Percentage Interest in Automile Parent, which is currently 7.422%, until the payment of the Redemption Payment to Mr. Rosenberg.

### COUNT II: Breach of Fiduciary Duty

47. Plaintiffs reallege and incorporate herein by reference each of the prior paragraphs.

48. As CEO of the controlling member (GBP Prime) of Automile Parent, Mr. Gentile owed members of the Board of Managers, including the Rosenberg Group, the highest obligation of good faith, fair dealing, loyalty, candor and due care.

49. Mr. Gentile breached his fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith, candor and supervision by, in part, causing Automile Parent to misallocate 100% of the net cash flow of the business to GPB Prime and not to the Rosenberg Group.

50. Mr. Gentile had actual or constructive knowledge that he had caused Automile Parent to maintain ineffective internal controls to ensure the proper allocation of net cash flow. These actions were not a good faith exercise of prudent business judgment to protect and promote the Rosenberg Group's corporate interests. Mr. Gentile, through his conduct

11

specified in this Complaint, breached his duty of care, loyalty, candor, accountability and disclosure to members of the Board of Managers, including the Rosenberg Group.

51. As a direct and proximate result of Mr. Gentile's affirmative misconduct, the Rosenberg Group has sustained significant damages. As a result of the misconduct alleged in this Complaint, Mr. Gentile is liable to the Rosenberg Group who have suffered at least the following damages:

   a. The Rosenberg Group was deprived of accurate information concerning the Automile Parent and its finances;

   b. The Rosenberg Group was deprived of its 7.422% share of the net cash flow from the sale of PAG as well as its proportionate share of the net cash flow which PAG earned prior to the sale.

## COUNT III: Business / Corporate Waste

52. Plaintiffs reallege and incorporate herein by reference each of the prior paragraphs.

53. By engaging in the conduct described herein, Mr. Gentile engaged in business / corporate waste, and in breach of his duty to the Plaintiffs.

54. Mr. Gentile's acts and omissions of business / corporate waste in breach of his duty caused losses, damages, and lost economic opportunity as sustained by the Plaintiffs and to their detriment, and it resulted in the unjust enrichment of Mr. Gentile.

## COUNT IV: Unjust Enrichment

55. Plaintiffs reallege and incorporate herein by reference each of the prior paragraphs.

56. Mr. Gentile illegally used, interfered with and obtained benefits from Automile Parent and property, assets and rights of the Plaintiffs.

57. Mr. Gentile's actions, courses of conduct and omissions were wantonly, intentionally and maliciously conducted against the Plaintiffs, to their detriment.

58. Mr. Gentile has been unjustly enriched by his actions as described herein.

59. Mr. Gentile's unjust enrichment caused losses, damages, and lost economic opportunity as sustained by the Plaintiffs and to their detriment, and it resulted in the unjust enrichment of Mr. Gentile.

### vi. Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

a. enter judgment in favor of Plaintiffs and award Plaintiffs damages on each count set forth above;

b. issue an order attaching Mr. Gentile's assets as prejudgment security;

c. award Plaintiffs punitive and exemplary damages according to proof;

d. award Plaintiffs their attorneys' fees and costs; and

e. grant such other and further relief as the Court deems just and proper.

### vii. Jury Demand

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

DAVID ROSENBERG, THE ROSENBERG
FAMILY NOMINEE TRUST, and
THE ROSENBERG FAMILY NOMINEE
TRUST/SAWDRAN,

By their Attorneys,

/s/ Benjamin J. Wish
Benjamin J. Wish (BBO No. 672743)
Widmaier M. Charles (BBO No. 705208)
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA 02110
Telephone: 617-720-2626
bwish@toddweld.com
wcharles@toddweld.com

Dated: January 22, 2024